Case number 22-5302. Leatrice Tanner-Brown, personal representative of the estate of George W. Curls Sr. and of the class of similarly situated individuals and Harvest Institute Freedmen Federation LLC, on behalf of itself and all persons similarly situated, at balance, versus Debra A. Haaland, Secretary of the Interior, and Tara McLean Sweeney, Assistant Secretary, Indian Affairs. Mr. Squire, for the accountants. Mr. Richmond, for the appellees. Mr. Squire, good morning. Good morning, Your Honor. May it please the court, counsel. Your Honor, I would like to begin by, number one, thanking this panel for according the opportunity to my clients to have their cause heard by this court, given the longstanding and deprivation that they are seeking to remedy through this appeal. The background to this appeal, I'm sure, is well known to the court, and I don't want to waste time going over things that the court already is conversant with, but I'd like to start by saying that the basic concern that is accorded to my clients, who are the descendants of Cherokee freedmen from their tribesmen who are referred to historically as Native or Blood Cherokees, and that distinction is so relevant here because the district court concluded in this case that despite the request for identical relief that was raised by the Blood Cherokees in connection with their claim of breach of that my clients lack standing because of their inability to point to a concrete and particularized injury capable of redress by the government or their lack of the requisite personal stake in the outcome to confer standing and to make this judiciable. These claims have been pursued for some time by my clients, but have always been thwarted at the base upon the allegation that the dispute as presented by them is not justiciable. This derives and begins with an 1866 treaty under which relationships between the Cherokee nation and other members of tribes referred to historically as the five civilized tribes were normalized following the Civil War. Following the 1866 treaty, which stated that any right of citizenship for Native Cherokees must be extended equally to freedmen, resulted following the General Allotment Act of 1887, the Dawes Act, and the 1898 Curtis Act, which allotted the land of Cherokee freedmen, took place. The ancestors of my client, George Curls, and his siblings were enrolled members of the Cherokee tribe. In 1902, when Mr. Curls was five years old, he became an enrolled member of the Cherokee tribe. In 1910, after the allotment of the Cherokee freedmen lands, when Mr. Curls was 13 years old, he received a 60-acre allotment. That allotment was subject to the Act, which really is the focus of this appeal, which is the Act of May 27, 1908. Before you get to that, can I ask a question? In your prior appeal, we held that there was a lack of standing because Ms. Tanner Brown didn't have any, or sure, at least at that time, identify any legal capacity in which she was connected with Mr. Curls' estate. On this complaint, it alleges that she's bringing the Act in her own right as a descendant of George Curls. The court concluded that if there was a cause of action at all, that it accrued to Mr. Curls himself. Ms. Tanner Brown went back the appropriate probate court and was appointed the personal representative of the estate of her grandfather. She now has the legal interest that was missing in the prior appeal. Yes, Your Honor, that is correct. The district court acknowledged that. The district court basically said, well, you're a little closer this time, but no cigar. The reason for that is because you have not alleged a concrete particularized injury. My concern with that conclusion is that the court did not focus upon the relief that Ms. Tanner Brown actually was pursuing. The court required it to be shown that in order to bring this claim, there must be some evidence of some wrongdoing or damage to the actual allotment of Mr. Curls. That was not the claim here. The claim here is the same nature of the claim that was raised and recognized by this honorable court in the case of Eloise here. The freedmen are entitled to an accounting concerning the treatment accorded to their allotments by the government. But even to get that accounting, what are you deriving that from in terms of either the May Act or some statutory provision? You're bringing a cause of action generally for this accounting, but under what basis that there's some duty to This court stated in the Eloise Cobell case that the Cherokee natives were entitled to an accounting for the treatment by the government of their individual Indian money accounts. In the case of the Tanner Brown plaintiffs, there were no individual Indian money accounts because those freedmen were treated differently than the so-called blood Cherokees. What you have here is a situation in 1898, the Curtis Act allotted the lands of the five civilized tribes. To the extent land was allotted to blood Cherokees, the revenue and so forth derived from those allotments, despite the act of May 27th, 1908, continued to obtain the protection of the United States government. So the revenue and royalties from those allotments and so forth were placed in the individual Indian money accounts. In the case of freedmen, who the treaty had said are entitled to the same status, that revenue was never put into individual Indian money accounts. These freedmen and their interests were basically ignored. When the government concluded in Cobell that the United States had a duty to provide an accounting, there was no finding that an equivalent duty was owed to the freedmen because the freedman's position was never recognized as being equivalent. It's our position. Your argument is that it should be. It should have been equivalent. That's your legal argument on the merits. That is our legal argument on the merits to get over the standing barrier. We have to assume you're right on the merits. At this stage, we assume you're right on your legal merits in analyzing your standing. Whether or not you are is to be decided later. That is correct, Your Honor. We have to assume you're right that either statutorily or through unfair or unequal treatment, you were entitled to an accounting just like the other Cherokee members. Assuming that, then you have asked for an accounting and that's your injury as a deprivation of accounting. Do I answer this question? That is correct, Your Honor. The injury is the deprivation of the accounting which could not be justified on any reasonable basis because it was said whatever duties were owed to the so-called blood Cherokees were also owed to the freedmen. To further aggravate this, to deny the blood Cherokees or to exalt their interests to those of the freedmen just exacerbates the whole historical context of what happened here. Here you have a sect or an element, so-called blood Cherokees, who basically aligned themselves with the confederacy, had their position in relation to the United States normalized, and then was given very paternalistic treatment by the United States. Whereas the persons held in bondage by the individuals who rebelled, who were less sophisticated and more capable of being exploited because of their lack of sophistication and execution, were then told, but your land can basically be governed by the state courts of Oklahoma, and to the extent that you are not a minor, we're going to remove any restrictions at all or deprive you of any protection. So what we have here is under the act of May 27, 1908, at least as a minimum, because restrictions against alienation were retained as to freedmen minors, at a minimum, those minors should benefit from the same type of protection and paternalism that the so-called blood Cherokees received. And that has never happened. And that points out the dichotomy here and this disparity that we're asking this honorable court to, in referring to Cobell, accord the same protection and treatment to these Cherokee freedmen that has been accorded to the so-called blood Indians, based upon the authority that was articulated very clearly over and over again by this court in Cobell concerning the nature of the relationship between these tribes and the federal government. I've asked to reserve two minutes, Your Honor, and I'd like to take advantage of that unless the court has further questions at this point. Thank you. Thank you. Good morning, Your Honors. May it please the court, Ben Richmond for the federal defendants. The court previously affirmed the dismissal of the nearly identical suit in 2017. It should affirm the district court's dismissal here for primarily three reasons. First, the federal defendants here have never held nor have they ever been required to hold George Trust. Second, the act of 1908 here- That sounds like a merits argument. They've got an argument that you did still have trust obligations. You argue they did not, but the district court here dismissed for standing. A claim for an accounting is a long recognized form of injury, Article III injury. And so whether they're right or wrong on the merits is not something we decide at the standing stage. So, Your Honor, it might help for me to explain a bit about how we got to this purported accounting duty argument here that came before the court. And I'd also like you to add into that discussion, what do you perceive are your duties? Because it does say make reports, etc. I've looked up 10 Westlaw cases or so that even refer to the statute and it doesn't ever give anything very explicit about that. So to the extent that you can add on kind of that history about why this comes into being, because it is an act of protection in regard to these lands. Yeah. Our position is the act of 1908, it's purely discretionary authority for the secretary to investigate conduct of Oklahoma State probate courts. And so just getting into how the accounting duty argument, the purported accounting duty argument came before the court, the district court originally dismissed based on plaintiff's failure to demonstrate mismanagement. That was originally pleaded standing in their complaint that said JA4 talking about losses in mismanagement established standing. The district court dismissed on that basis because plaintiffs had failed to demonstrate mismanagement. And then in the Rule 59 motion, plaintiffs then argued that there was a purported accounting duty and that the denial of an accounting was- That's the relief requested in the complaint. It's all over the complaint that we want an accounting. So this isn't something that just appeared in Rule 59. This is what the complaint seeks. Is an accounting full stop. And that's an Article III injury. So whether the court frames this as a standing inquiry or an inquiry on the merits, the analysis and the results should be the same. But they're very, very different things. They're very different questions. And the district court here just statutory scheme and the fact that federal courts were initially involved in handling the curls of states, at least according to some of the documents, public record documents attached to the motion to dismiss. And the secretary had the capacity. We don't know if the secretary had appointed a representative in George Curls. Plaintiffs had not pleaded that there's- They don't know if one was appointed. Do you know whether one was appointed? I- No, no. So then we can't decide this merits question. Now that seems like a pretty relevant fact question because if a federal representative had been appointed, then the argument as to a duty, some sort of fiduciary protective duty, would be very different. But that's just an open fact question. So, Your Honor, I think the denial of the Rule 59 motion when the court addresses the accounting, the purported accounting duty here, you know, whether the court frames what standing. Again, the analysis is the same. The district court- It's not. I mean, I'm sorry. I think it's really dangerous. And I'm surprised the government would be asking us to confuse standing analysis with merits analysis because the government quite often tells us not to. So the question as to standing, she has the legal interest now, which she says you guys agree she does as the representative of the estate. Um, she has a cognizable Article 3 injury, the request for an accounting as to the estate. And there's no doubt that it would be redressed by order of a court directing such an accounting. That's standing, full stop. And I don't hear you saying why it's not. I hear you saying why we don't think the law entitles her to an accounting, which isn't a merits question. But the district court ruled here on standing. What about what I just said is incorrect? Nothing that you said is incorrect, Your Honor. I think it's the unique nature of this case that- It's unique about this case that we should collapse standing and merits like we don't do in other cases. I mean, I would- We treat them differently. Uh, here, Your Honor, just I think because of the the nature of the purport that the assertion of injury that- You think you have a very strong argument on the merits, I think, right? And lots of people think they have very strong arguments on the merits. But that's not the same as the- We don't then say the party doesn't have standing. And you agree with that's the government. It's got to be the government's position. So the government's position is standing and the merits are distinct inquiries. And if the court feels that we have a- And the fact that there's a really- I mean, there is- You are right, to be fair. There is an extremely narrow exception where a claim is asserted is so fanciful, frivolous, nonsensical, commerical that it doesn't even state a federal claim of law. But we're not in that area here. So they have standing, which is all the district court ruled. And then you have your arguments on the merits. But it seems to me that this is actually looking at the fact that there are actually documents in the record, public record documents in the record about where there is a federal court in the Indian Territory making decisions about the Curls children, including George by name- A state court, Your Honor. Yes. Oklahoma State Court. No, no, no, no. There are federal court ones. If you look at their attachments, Exhibit F to the response to the motion to dismiss, there are a number that are the- I just told you which court it was- in the United States Court for the Indian Territory. So this started in this case. I don't know how this shakes out on the merits because this was briefed to us and decided by the district court as a standing case. But it started with federal courts. And these are about Mr. Curls' father asking for appointments as to his children, listing George as one of them. And then the 1908 Act comes along, and then there's a couple in here that are probate courts. But the question of what happens- two questions of what happens to federal duty if they start dealing with an estate? Does something continue? Is a very different- is a question that we don't have any information about in this case. And the separate question, which you said we just don't have any facts on yet at this stage, which is just standing, of whether or not a representative was appointed by the secretary, which would change the account, could- I won't say would- could change the accounting or the fiduciary duties is an unknown fact. So we just- So I would just say the government- I think there's a lot to go back to the district court maybe on the merits. The government adequately pleaded here failure to state a claim. There are multiple bases that if this court feels that it would like- You can't answer these- you can't answer the factual question of whether or not- it's actually three questions, I guess. You can't answer the factual question of whether or not a representative was ever appointed for Mr. Curls' children, including George Curls. So that's- So there is- You can't answer that. You- We don't- I don't understand. I haven't seen any law here about what happens if originally the federal government is issuing orders and making decisions through its federal courts about this territory. And then there's supposed to be a transition to probate court. What is the status of the government? That's very unique. What is the status of the government's, if any? Sounds like your argument would be none. And that could be right. But that's much more complicated once you see that federal courts were involved in these estates. And third, they have an argument. Essentially, it sounds like sort of an equal treatment, equal protection. So they never- they never pled an equal protection claim here. And I would just say that this was a fee-simple transfer to George Curls. Because right now, all they want is an accounting. It's once they get their- But there was no trust. There was no trust here to begin. So you can't even get to the question of an accounting- That's a merits argument as to why they don't get- That's why- And the merits argument in standing here is one and the same because of how the district court denied the Rule 59 motion. But whether there's any trust may depend on whether a special representative was appointed. It may depend- There's no trust duty in Act of 1908 whatsoever. It may not be- Wait, well, hang on. There may be, if a represent- there may be an argument. It would be different than what you're arguing now if a representative had been appointed and hadn't fulfilled its duties, which we don't know that. And plaintiff has failed to plead those facts. And we briefed that he failed to state a claim. There were no- none of the predicates were ever- That is a 12b6 motion. We're here for a denial of standing. And so if this court would like to look to other authority where courts have found that a failure to allege an enforceable fiduciary duty is irrelevant to a standing inquiry, you can look to Fletcher v. United States. That's a federal circuit case, 26F41314. So there have- Courts, because of the unique nature of enforceable fiduciary obligations and whether that constitutes an injury in fact, courts have looked to the fiduciary duty or not. As a standing inquiry? As a standing inquiry. Okay, well, that doesn't mean I'm going to agree with the federal circuit on that. Understood, your honor. I will- I just want to also briefly speak to the section six of the act of 1908 in response to Judge Child's question. So again, to maintain a breach of trust claim, plaintiffs would have to establish that the federal government accepted enforceable fiduciary duties based on specific rights-creating, duty-imposing language, and a treaty statute of regulation. Here's section six, which is relied on by the plaintiffs provides that most discretionary authority for the secretary to investigate Oklahoma probate courts' treatment of minor lawtees. The secretary is empowered to appoint a federal representative as they may deem necessary to investigate conduct of state court-appointed guardians. And the federal representative then can form an opinion about that guardian's management. And only if a federal representative is appointed, and only if that federal representative makes findings about mismanagement, then there would be certain obligations for the federal representative to, for example, make reports to the secretary. So that discretionary language, it's not rights-creating, it's not duty-imposing. And the act of 1908 section six does not mention an accounting whatsoever. And are you saying that the accounting right only derives from that act, if at all? It can only, it can only derive from specific rights-creating, duty-imposing obligations and statute treaty regulation. And there's no statute treaty regulation here that provides such an accounting, purported accounting. And even if... And what is meant by the reports that are supposed to come from that act? The reports would be if the federal representative made a finding about mismanagement. So that discretionary language, it does not create any rights. And again, there's no mention of a specific purported accounting duty in the actual act. And so I just want to come back to this basic point though, your honors, beyond the language of the act of 1908, that the secretary here can't own accounting duty when nothing has ever been held in trust on behalf of George Curls. So Curls received his allotments as a minor by deed. This was a feasible transfer directly from the Cherokee Nation to George Curls. And so the 1908 act clarifies that jurisdiction is vested in the Oklahoma probate courts, where the state court would, for example, appoint a guardian to oversee minors affairs. But the act of 1908 itself, does not create any trust. There is no trust corpus. There's no mention of a fiduciary, a beneficiary, a trustee. There's no mention of accounts. And that total absence of a trust corpus is why the Cobell case does not apply here. In Cobell, that was a claim brought on behalf of plaintiffs when the government held individual Indian money accounts, trust accounts on their behalf. Here, the government does not hold anything on behalf of Curls. So again, that comparison to Cobell, it's just inapplicable here. So in the record, we have these federal court orders pertaining to these estates and appointing guardians. And it's just not, this is not the probate, and this is actually... But then the appointment... Excuse me, this is pre-1908 act, but it involves a very estate at issue here, or the George Curls land, which becomes the estate at issue here. So if the federal government was entering orders as to that land, is there anything that tells us one way or the other, whether a trust could have attached even before the 1908 act? And so a trust duty, an enforceable fiduciary duty would only attach based on specific rights creating duty imposing language. And I'm not familiar with that specific order about the appointment of a guardian here, Your Honor. But... These were all the documents attached to their motion to dismiss, and they're public record documents. Can a court order impose a trust? Not unless it's a rights creating duty imposing... Excuse me, no, it could not, because it's not from a statute, it's not from a treaty, it's not from a regulation, it's the sovereign authority of the executive. Before 1908, if you're in a non-state, in a federal territory. Again, I'm not aware of any legal precedent that allows a court order to create a trust duty, even if we're in a federal territory. We just don't know. It's sort of in that time. And again, I think if there were such a rule, it would controvert Supreme Court precedent. I mean, Arizona versus Navajo Nation. The court is very clear. You can only create an enforceable trust duty based on your rights creating duty imposing language in a treaty, statute, or regulation. Also just add that the court has an alternative basis here to affirm, and that's based on the failure to plead mismanagement associated with the allotments here. There were no pleadings in the complaint about specific leases executed on behalf of Curls. There were no allegations about specific mismanagement by a guardian or curator. And again, we would argue that plaintiff hasn't pleaded traceability either, because they haven't shown how George Curls received more or different amount of royalties had the federal defendants fulfilled their purported statutory duties. So, unless there are any questions from the panel, your honor. Thank you for these reasons. So, from the judge and to support. All right. Why don't you take two minutes. Thank you, your honor. I would just say in response to a couple of points raised by the trust corpus, the leases and the treatment of the leases in this case are something that we have no information because we've never gotten beyond the threshold point where we could begin to do some discovery. The other thing is the act of May 27th, 1908, if you really look at the impact and its intent, the thing that act accomplished was it opened up land that had been allotted to Friedman for settlement in Oklahoma. This act occurred at approximately the same time as Oklahoma statehood. And basically what occurred was that by removing these restrictions on the opportunity to basically exploit the Friedman, whereas the protections were retained for the land that had been allotted to the native Cherokees and to Friedman miners. The other point, judge, is that this court stated in Corbell versus Norton that the Trust Fund Management Reform Act required the secretary to prepare periodic statements that account for the performance of balances to account holders. This only goes to the point I raised earlier about the fact that Cherokee Friedman were never given individual Indian money and accounts because they were basically, for lack of a better term, thrown to the wolves, whereas their Cherokee natives were the same land was the basis for their individual Indian money accounts. And in 1994, Congress passed legislation that acknowledged fiduciary duties of the secretary owed to beneficiaries of individual Indian money accounts. So at a minimum, the treatment accorded to the Cherokee Friedman here perpetuated past discrimination. There was no reason for restrictions on alienation against their allotments to even be removed in 1908, and they were removed in order to make it easier for them to be exploited. Thank you very much, y'all.
judges: Henderson, Millett, Childs